1
2
3
4
5
6                        UNITED STATES DISTRICT COURT
7                             DISTRICT OF NEVADA
8                                   * * *
9    CARL OTIS SULLIVAN,                    Case No. 2:05-cv-00448-MMD-NJK
10                          Petitioner,                   ORDER
11        v.
12   WARDEN NEVINS, *et al.*,
13                         Respondents.
14
15   **I.     INTRODUCTION**
16          This habeas corpus action is brought by Carl Otis Sullivan, who is serving prison
17   terms on convictions in Nevada's Second Judicial District Court, based on guilty pleas
18   pursuant to a plea agreement, for robbery, burglary, and possession of stolen property.
19   Sullivan's convictions all result from his burglary of a Reno, Nevada, home, his robbery
20   of an automobile, and his possession of stolen property taken from the home.  Sullivan's
21   amended habeas petition is before the Court on the merits of his claims.  The Court will
22   deny all the claims asserted by Sullivan in his amended petition, and the Court will deny
23   Sullivan a certificate of appealability.
24   **II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**
25          As Sullivan's conviction was upon a guilty plea, before trial, the facts regarding
26   his crimes have not been fully developed. However, the presentence investigation
27   report, prepared for purposes of Sullivan's sentencing, and filed as an exhibit by him in
28   this action, states the following:

The following information has been obtained from the file of the Washoe County District Attorney's Office which includes reports of the Reno Police Department.

At approximately 10:05 A.M., on December 4, 1997, officers of the Reno Police Department were dispatched to 543 California Avenue, regarding a vehicle theft which had just occurred. Dispatch was informed that the vehicle was taken by a suspect wielding a knife and a description of the vehicle was broadcast.

At approximately 10:15 A.M., the Washoe County Sheriff's Office helicopter "Raven" located the vehicle in the area of Swope Middle School and units of the Reno Police Department responded. A high-risk stop was made and the lone occupant, later identified as the defendant, was removed from the vehicle. The defendant was restrained and Mr. Sullivan spontaneously stated, "I knew I had nowhere to go when I heard the helicopter over me." The officers located a black leather sheath containing a black handled knife with a blade of approximately four inches on the defendant's belt.

Other officers of the Reno Police Department contacted the victim at his residence. The victim informed that he had arrived home at approximately 10:00 A.M., and when he entered the garage, observed the suspect later identified as the defendant, leaning against his Mercedes Benz. The victim said he commanded the suspect to leave, at which time Mr. Sullivan unsheathed his knife and ran towards the victim in an attempt to stab him. The victim then backed out of the garage.

The victim stated that the defendant then got into his Mercedes Benz and backed out of the garage. The victim related he then closed the gate to the street and as he was doing so, the defendant accelerated the vehicle, causing the victim to get out of the way. The vehicle then crashed through the gate and portions of the gate struck the victim and his dog. The victim received an injury to his leg, but he declined medical attention.

Investigation at the scene disclosed that Mr. Sullivan had apparently gone through two downstairs bedrooms and one upstairs bedroom looking for items to steal. A safe of approximately 24" x 24" was found in the garage and the victim said that it had previously been stored upstairs. The point of entry was on the east side with a screen being removed and the window broken.

The officers recovered stolen property valued in excess of $99,000 from the defendant's person and inside the victim's stolen vehicle.

The property included jewelry, precious coins, two mink coats, sterling silver silverware, and cameras.

The victim was brought to the scene and identified the items taken from the vehicle and from the defendant as belonging to him. The victim also positively identified the defendant, and Mr. Sullivan when hearing the identification stated, "Well, no shit, Sherlock." The victim's property was photographed and returned to the victim, excluding his vehicle. The defendant was arrested and transported to the Washoe County Jail. During the booking process, the defendant asked "How much time do you

think I will get" and "How much time can you get for burgin a house." When the defendant was advised of all charges, he stated, "I've really done it to myself this time." The defendant was then booked without further incident.

Presentence Investigation Report, Exhibit 44, pp. 5-7; *see also* Transcript of Proceedings of August 6, 2003, Exhibit 30, pp. 49-50, 70 (testimony of Sullivan at evidentiary hearing, recounting his commission of the crimes).[1]

Sullivan waived a preliminary hearing, and on December 29, 1997, was charged by information with robbery with the use of a deadly weapon, burglary, and possession of stolen property.  *See* Exhibits 2 and 3.

On January 7, 1998, Sullivan entered a plea agreement. Guilty Plea Memorandum, Exhibit 4. Sullivan agreed to plead guilty to the charges in the information. *Id.* The State agreed, with regard to Sullivan's sentence, that it would "concur with the recommendation of the Division of Parole and Probation." *Id.* at 4. The State also agreed not to pursue any other charges against Sullivan.  *See* Transcript of Proceedings of January 8, 1998, Exhibit 5, pp. 2-4.  Additionally, the State agreed not to pursue the deadly-weapon enhancements. *Id.* at 3-4. On January 7, 1998, Sullivan entered his guilty pleas, pursuant to the plea agreement. *See id.*

Sullivan's sentencing hearing was on February 13, 1998. *See* Transcript of Proceedings of February 13, 1998, Exhibit 7. The Division of Parole and Probation recommended: a prison term of 156 months, with minimum parole eligibility of 35 months, for the robbery; a consecutive prison term of 96 months, with minimum parole eligibility of 22 months, for the burglary; and a consecutive prison term of 96 months, with minimum parole eligibility of 22 months, for possession of stolen property. Presentence Investigation Report, Exhibit 44, p. 12. At the sentencing hearing, Sullivan's counsel presented to the court a letter from a doctor, regarding Sullivan's

---

[1]The exhibits referred to in this order are those filed by Sullivan and located in the record at dkt. nos. 15 through 23, and those filed by respondents and located in the record at dkt. no. 39.

substance abuse, its effect on his commission of the crimes, and his willingness to seek treatment, and counsel argued for a lesser sentence, specifically, that the three sentences run concurrently. *See* Transcript of Proceedings of February 13, 1998, Exhibit 7, pp. 3-5. The prosecutor responded, discussing Sullivan's significant prior criminal record, the serious nature of the crimes he committed in this case, Sullivan's lack of remorse, and the danger he posed to the community, and the prosecutor asked the court to impose consecutive sentences as recommended by the Division of Parole and Probation. *Id.* at 5-7. The victims then made statements. *Id.* at 7-12. Sullivan also made a statement. *Id.* at 12-14. The court sentenced Sullivan as recommended by the Division of Parole and Probation: a prison term of 156 months, with minimum parole eligibility of 35 months, for the robbery; a consecutive prison term of 96 months, with minimum parole eligibility of 22 months, for the burglary; and a consecutive prison term of 96 months, with minimum parole eligibility of 22 months, for possession of stolen property. *Id.* at 14-15; *see also* Order of Amended Judgment, Exhibit 23. The court also ordered Sullivan to pay restitution in the amount of $12,000. Transcript of Proceedings of February 13, 1998, Exhibit 7, p. 14; Order of Amended Judgment, Exhibit 23.

Sullivan appealed.  *See* Notice of Appeal, Exhibit 9. On December 13, 1999, the Nevada Supreme Court determined that there was an error in the judgment with respect to the robbery conviction; Sullivan pled guilty to robbery without use of a deadly weapon, but the judgment of conviction indicated that the robbery was with use of a deadly weapon. *Sullivan v. State*, 115 Nev. 383, 390-91, 990 P.2d 1258 (1999) (the Nevada Supreme Court's opinion is found in the record at Exhibit 12). The court affirmed, but remanded the case to the state district court for the limited purpose of correcting the clerical mistake in the judgment. *Id.* at 391; *see also Sullivan v. State*, 120 Nev. 537, 538, 96 P.3d 761 (2004).  On January 3, 2000, the state district court entered a corrected judgment. Exhibit 15. The Nevada Supreme Court's remittitur issued on January 10, 2000.  Exhibit 14.

///

On May 10, 2000, Sullivan filed, in the state district court, a petition for writ of habeas corpus.  Exhibit 16.

On December 11, 2001, while Sullivan's state-court habeas petition was pending in the state district court, apparently realizing that the corrected judgment was entered before the Nevada Supreme Court's remittitur issued, the state district court vacated the corrected judgment (Exhibit 22), and entered a new Order of Amended Judgment (Exhibit 23).

Counsel was appointed for Sullivan for his state-court habeas petition, and counsel supplemented his petition. Exhibits 24, 49. On August 6, 2003, the state district court held an evidentiary hearing. Transcript of Proceedings of August 6, 2003, Exhibit 30. Sullivan's trial counsel testified. *Id.* at 7-45. Sullivan also testified. *Id.* at 46-71. In an order entered September 17, 2003, the state district court denied Sullivan's petition. Findings of Fact, Conclusions of Law and Judgment, Exhibit 32.

Sullivan appealed. *See* Notice of Appeal, Exhibit 34; Fast Track Statement, Exhibit 36. The Nevada Supreme Court affirmed on March 5, 2004. *Sullivan v. State*, 120 Nev. 537, 96 P.3d 761 (2004) (the Nevada Supreme Court's opinion is found in the record at Exhibit 42).

This court received from Sullivan a pro se habeas petition, and a request for appointment of counsel, on March 31, 2005 (dkt. nos. 8, 9). Counsel was appointed (dkt. nos. 7, 10). On January 19, 2006, counsel filed an amended habeas petition on Sullivan's behalf (dkt. no. 14).

On February 22, 2006, respondents filed a motion to dismiss (dkt. no. 28), arguing that Sullivan's petition is untimely, that certain claims are unexhausted, and that certain claims are barred by the doctrine of procedural default. On August 21, 2006, the Court granted the motion to dismiss, ruling Sullivan's petition barred by the statute of limitations. Order entered August 21, 2006, dkt. no. 43. In that order, the Court also ruled that the petition was not barred by the procedural default doctrine. *Id.* The Court ///

did not address the question of the exhaustion of Sullivan's claims in state court. *Id.* The action was dismissed. *Id.*; Judgment, dkt. no. 44.

Sullivan appealed (dkt. no. 45). The court of appeals reversed in part, and remanded the case to this Court for further consideration of the potential impact of the intervening authority in *Harris v. Carter*, 515 F.3d 1051 (9th Cir.), *cert. denied*, 555 U.S. 967 (2008), upon this Court's ruling that Sullivan had not established a basis for equitable tolling. Memorandum Order of Court of Appeals, dkt. no. 53.

On remand, on March 31, 2009, this Court again granted the motion to dismiss, and dismissed the action as time-barred. Order entered March 31, 2009, dkt. no. 64; Judgment, dkt. no. 65.

Sullivan again appealed (dkt. no. 66). On July 21, 2010, the court of appeals vacated the judgment and remanded, ruling that Sullivan was entitled to equitable tolling and that his federal habeas petition was, therefore, timely filed.  Memorandum Order of Court of Appeals, dkt. no. 76.

Following that remand, respondents filed their answer on February 24, 2011 (dkt. no. 85), and Sullivan filed a reply on May 2, 2011 (dkt. no. 90).

## III.     STANDARD OF REVIEW OF MERITS OF SULLIVAN'S CLAIMS

28 U.S.C. § 2254(d) sets forth the standard of review, applicable to this case, under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

///

6

1    A state court decision is contrary to clearly established Supreme Court

2    precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that

3    contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state

4    court confronts a set of facts that are materially indistinguishable from a decision of [the

5    Supreme Court] and nevertheless arrives at a result different from [the Supreme

6    Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (*quoting Williams v.*

7    *Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

8    A state court decision is an unreasonable application of clearly established

9    Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court

10   identifies the correct governing legal principle from [the Supreme Court's] decisions but

11   unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538

12   U.S. at 75 (*quoting Williams*, 529 U.S. at 413). The "unreasonable application" clause

13   requires the state court decision to be more than incorrect or erroneous; the state

14   court's application of clearly established law must be objectively unreasonable. *Id.*

15   (*quoting Williams*, 529 U.S. at 409).

16   The Supreme Court has further instructed that "[a] state court's determination

17   that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

18   could disagree' on the correctness of the state court's decision." *Harrington v. Richter*,

19   131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

20   The Supreme Court has also emphasized "that even a strong case for relief does not

21   mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer*, 538

22   U.S. at 75; *see also Cullen v. Pinholster*, 131 S.Ct.1388, 1398 (2011) (describing the

23   AEDPA standard as "a difficult to meet and highly deferential standard for evaluating

24   state-court rulings, which demands that state-court decisions be given the benefit of the

25   doubt") (internal quotation marks and citations omitted).

26   The state court's "last reasoned decision" is the ruling subject to section 2254(d)

27   review. *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). If the last reasoned

28   state-court decision adopts or substantially incorporates the reasoning from a previous

7

state-court decision, a federal habeas court may consider both decisions to ascertain the state court's reasoning. *See Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir.2007) (en banc).

If the state supreme court denies a claim but provides no explanation for its ruling, the federal court still affords the ruling the deference mandated by section 2254(d); in such a case, the petitioner is entitled to federal habeas corpus relief only if "there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S.Ct. at 784.

The analysis under section 2254(d) looks to the law that was clearly established by United States Supreme Court precedent at the time of the state court's decision. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

IV.    **ANALYSIS**

   A.    **Ground 1**

In Ground 1 of his amended habeas petition, Sullivan claims that he was "deprived of his due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution by the State's breach of its plea agreement with Sullivan during the sentencing proceedings." Amended Petition (dkt. no. 14), p. 5.

In the plea agreement, the State agreed, with regard to Sullivan's sentence, that it would "concur with the recommendation of the Division of Parole and Probation." Guilty Plea Memorandum, Exhibit 4, p. 4. The Division of Parole and Probation recommended consecutive sentences.  Presentence Investigation Report, Exhibit 44, p. 12. Sullivan's counsel presented to the court a letter from a doctor, regarding Sullivan's substance abuse, its effect on his commission of the crimes, and his willingness to seek treatment, and he argued for a lesser sentence, specifically, that the three sentences run concurrently. *See* Transcript of Proceedings of February 13, 1998, Exhibit 7, pp. 3-5. The prosecutor responded to that argument, discussing Sullivan's significant prior criminal record, the serious nature of the crimes he committed in this case, Sullivan's

lack of remorse, and the danger he posed to the community, and the prosecutor asked the court to impose consecutive sentences as recommended by the Division of Parole and Probation. *Id.* at 5-7. Citing *Santobello v. New York*, 404 U.S. 257 (1971), Sullivan contends that this amounted to a breach of the plea agreement, in violation of his federal constitutional rights.

Regarding this claim, the Nevada Supreme Court ruled as follows:

> The issue before this court is whether the state breaches an agreement to concur with the recommendation of the Division of Parole and Probation by advocating in favor of the recommendation. [Footnote omitted.] We conclude that the state may advocate in favor of a sentence that it has agreed to recommend as part of a plea agreement so long as the state does not explicitly or implicitly seek to persuade the sentencing court to impose a harsher sentence than that which the state agreed to recommend. We further conclude that the state did not breach the plea agreement.

> \*   \*   \*

> The state charged appellant Carl Otis Sullivan by information with one count each of robbery with the use of a deadly weapon, burglary, and possession of stolen property. Pursuant to plea negotiations, Sullivan agreed to plead guilty to the charges. In exchange for Sullivan's guilty plea, the state agreed to concur with the recommendation of the Division of Parole and Probation. The district court conducted a thorough plea canvass and accepted Sullivan's guilty plea.

> The Division of Parole and Probation prepared a presentence report. Therein, the Division recommended the following sentences, all to be served consecutively: 35 to 156 months for robbery; 22 to 96 months for burglary; and 22 to 96 months for possession of stolen property.

> At sentencing, defense counsel argued in favor of concurrent sentences based on a letter from a doctor, which had become available after the presentence report had been prepared. The letter indicated that the underlying offenses were the result of a long-term drug addiction and that Sullivan had accepted responsibility for his actions and addiction, and was willing to seek treatment. Counsel argued that giving Sullivan concurrent sentences would still give him considerable prison time but would also give him an opportunity to get treatment sooner rather than later. In response, the prosecutor addressed Sullivan's "quite incredible criminal history" and the serious nature of the charged offenses. The prosecutor further suggested that if Sullivan were truly serious about rehabilitation, then he could pursue that avenue after his release from prison regardless of the length of the sentence. The prosecutor concluded: "The only thing he has proven is that his level of violence is most certainly escalating and certainly putting this community in a great deal of danger. As a result, the consecutive sentences are appropriate, your Honor." Sullivan did not object to any of the prosecutor's comments.

9

The prosecutor then informed the court that the victims were present and wished to address the court.  The court swore in the victims, who testified about the impact that the crimes had on their lives.  The prosecutor did not participate in their testimony.  At the conclusion of the victim impact testimony, the prosecutor reiterated that the state requested the court to follow the Division's recommendation.

The district court followed the Division's recommendation and sentenced Sullivan to imprisonment for 35 to 156 months for robbery, a consecutive 22 to 96 months for burglary, and a consecutive 22 to 96 months for possession of stolen property.  [Footnote omitted.]  Sullivan filed this timely appeal.

*   *   *

The general principles governing the state's obligation to honor the terms of a plea agreement are well settled.  "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).  This court has held the state to the "most meticulous standards of both promise and performance" in fulfillment of its part of a plea bargain.  *Kluttz v. Warden*, 99 Nev. 681, 683, 669 P.2d 244, 245 (1983).  The violation of either the terms or the spirit of the agreement equires reversal.  *Van Buskirk v. State*, 102 Nev. 241, 243, 720 P.2d 1215, 1216 (1986).

A plea agreement is construed according to what the defendant reasonably understood when he or she entered the plea.  *Statz v. State*, 113 Nev. 987, 993, 944 P.2d 813, 817 (1997).  Here, the state agreed to concur in the recommendation of the Division of Parole and Probation. The initial question is whether Sullivan could have reasonably understood the plea agreement to preclude the state from advocating in favor of that recommendation by commenting on the facts and circumstances that supported the recommendation.

Appellant argues that because the state failed to explicitly reserve the right to present facts and argument at sentencing, he understood the plea agreement to preclude the state from commenting on the facts and circumstances supporting the Division's recommendation.   Appellant primarily relies on this court's decision in *Statz v. State*, 113 Nev. 987, 944 P.2d 813 (1997).  [Footnote omitted.]

In Statz, we stated that "[i]f the government agrees only to refrain from recommending a specific sentence and intends to retain the right to present facts and argument pertaining to sentencing, such a limited commitment should be made clear."  113 Nev. at 993, 944 P.2d at 817 (citing *United States v. Casamento*, 887 F.2d 1141, 1181 (2d Cir.1989); *United States v. Diamond*, 706 F.2d 105, 106 (2d Cir.1983)).   This statement, however, must be placed in context.  The requirement that the state explicitly retain the right to present facts and argument applies where the plea bargain is for the state to stand silent or make no recommendation at sentencing.  *See United States v. Corsentino*, 685 F.2d 48, 51 (2d Cir.1982).  Where the state has agreed to stand silent or make no recommendation, the defendant could reasonably understand

10

the plain language of such an agreement to restrict the state's right to make certain types of statements to the court that would influence the sentencing decision.  [Footnote omitted.]  *See id.*; *Block*, 660 F.2d at 1090-91.  If the state has entered such an agreement but nonetheless intends to present information that might influence the sentence, it must make such an intention explicit in the plea agreement and reserve the right to present facts and argument pertaining to sentencing.  *See Diamond*, 706 F.2d at 106 (government promised not to recommend "any specific sentence" but reserved right to present court with "relevant information" at sentencing).  Where the state fails to make such a limited promise clear, it may not " attempt[ ] to influence the sentence by presenting the court with conjecture, opinion, or disparaging information already in the court's possession." *Block*, 660 F.2d at 1091, *quoted in Statz*, 113 Nev. at 994-93, 944 P.2d at 817.

However, a promise to recommend a sentence is not a promise to stand silent.  Where the state agrees to make a particular recommendation, the agreement, unlike an agreement to stand silent or make no recommendation, does not by its terms restrict the state's right to argue or present facts in favor of the sentence recommendation.  Under such circumstances, the plea agreement cannot reasonably be understood to preclude the state from presenting facts or argument in favor of the recommended sentence. [Footnote omitted.]  Thus, the state is not required to explicitly reserve the right to argue in favor of a recommended sentence where it has promised to recommend a certain sentence. [Footnote omitted.]

Nonetheless, the state must be careful that in exercising this right it does not explicitly or implicitly undercut the sentencing recommendation by attempting to persuade the sentencing court to impose a harsher sentence than that which it agreed to recommend.  "*Santobello* prohibits not only 'explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them.'"  *United States v. Canada*, 960 F.2d 263, 269 (1st Cir.1992) (quoting *United States v. Voccola*, 600 F.Supp. 1534, 1537 (D.R.I.1985)).  A prosecutor's overall conduct must be reasonably consistent with the recommendation.  *Id.*  Thus, in arguing in favor of a sentencing recommendation that the state has agreed to make, the prosecutor must refrain from either explicitly or implicitly repudiating the agreement.  Our decision in *Kluttz v. Warden*, 99 Nev. 681, 669 P.2d 244 (1983) illustrates this proscription.

In *Kluttz*, the prosecutor agreed to recommend a sentence of no more than two years.  99 Nev. at 682, 669 P.2d at 244.  However, at sentencing, the prosecutor explained that he was unaware of the defendant's prior record at the time he negotiated the plea agreement and then addressed that record.  *Id.* at 682-83, 669 P.2d at 244-45.  This court recognized that the prosecutor did not expressly violate the plea agreement because he asked for a two-year sentence.  *Id.* at 684, 669 P.2d at 245.  Nonetheless, this court concluded:

> [I]n advising the sentencing judge that the state had entered into the plea bargain without knowledge of all of the salient facts, the prosecutor implicitly was seeking a sentence in excess of two years.  The vice in the state's conduct was not that it mentioned [the defendant's] prior

criminal record, but its insinuation that the plea bargain should not be honored.

*Id.* (citation omitted). Accordingly, this court concluded that the prosecutor's comments violated the spirit of the plea agreement. *Id.* at 684, 669 P.2d at 246; *see also Wolf v.State*, 106 Nev. 426, 794 P.2d 721 (1990) (concluding that prosecutor breached spirit of agreement to argue for sentence of no more than five years by implicitly arguing for presentence report's recommendation of nine years).

In this case, the state did not agree to stand silent or refrain from making a recommendation. Rather, the state agreed to make a specific recommendation — it agreed to concur in the recommendation of the Division of Parole and Probation. We therefore conclude that Sullivan could not have reasonably understood the agreement to restrict the state's right to argue in favor of the sentence recommendation. [Footnote: Although not dispositive, Sullivan's failure to object to the prosecutor's comments as a breach of the plea agreement evidences Sullivan's understanding that the agreement did not preclude those comments.]

Moreover, we conclude that the prosecutor did not breach the plea agreement. The prosecutor complied with the plea agreement by concurring in the recommendation of the Division of Parole and Probation. The prosecutor's specific comments about Sullivan's criminal record and the circumstances of the instant offenses were clearly intended to support the sentencing recommendation that the state agreed to make. Nothing in the prosecutor's comments implicitly or explicitly sought a harsher sentence than the state agreed to recommend. Thus, the comments did not undercut the sentence recommendation. We therefore conclude that the prosecutor did not breach the terms or the spirit of the plea agreement.

* * *

We conclude that the plea agreement in this case did not preclude the state from arguing in favor of the sentence recommendation. We further conclude that the prosecutor's comments at sentencing did not breach the spirit or the terms of the plea agreement.

*Sullivan*, 115 Nev. at 385-91, 990 P.2d at 1259-63.

This Court agrees with the conclusion reached by the Nevada Supreme Court. The plea agreement did not preclude the State from arguing in favor of the sentence that it agreed to -- the sentence recommended by the Division of Parole and Probation. As agreed, the prosecutor specifically asked the court to impose the sentence recommended by the Division of Parole and Probation. *See* Transcript of Proceedings of February 13, 1998, Exhibit 7, p. 12 ("Your Honor, if I may just make the record clear, the State asks that you follow the recommendation by the Division of Parole and Probation."). The prosecutor's arguments at the sentencing were wholly consistent with

the State's agreement to concur with the recommendation of the Division of Parole and Probation. There was no violation of the terms or spirit of the plea agreement.

The ruling of the Nevada Supreme Court was not contrary to, or an unreasonable application of, *Santobello*, and was not based on an unreasonable determination of the facts in light of the evidence.

### B.     Ground 2

In Ground 2, Sullivan claims that he "was deprived of his right to due process and a fair trial guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution due to the improper victim impact statements which were highly speculative and highly prejudicial." Amended Petition, p. 7.

The two victims of Sullivan's crimes made statements at the sentencing hearing. The statement of the first of the victims was as follows:

> Thank you, your Honor. I wrote this so I wouldn't forget anything. On December 4th, when Mr. Sullivan broke into my home, my [fiancé] and I both became victims of Mr. Sullivan. This home has been in my family since 1922, and it's always been a secure place, but at this time, I'm unable to sleep. I'm being treated for stress headaches. There's over a thousand dollars of my own money that's not even covered by insurance to repair the damages that Mr. Sullivan did to my home. The total damages are over $12,000. The car that he drove through my front gate is still in the shop. I'm unable to drive it.
>
> My [fiancé], who was there at the time, is the one that's really suffered most of the damage. He was about to start a new job at the time of this crime and his company had gone out of business, and when Mr. Sullivan drove my car right through the front gate, he damaged the cartilage in [his] knees and he can't work at a full time basis right now.
>
> To me it's apparent that Mr. Sullivan was willing to kill to commit this crime, to steal belongings from my house. That's all I have to say, your Honor.

Transcript of Proceedings of February 13, 1998, Exhibit 7, pp. 7-8. The statement of the other victim was as follows:

> I have something I'd like to read here. First date that stands out in my mind is that Carl Sullivan broke into my home in the professional manner in which he proceeded. When I walked in on him while he was loading up the car with valuables from my home, he was very methodical in the way he finished loading the car with what was already in his hands and whipped out a knife, had pointed at his side all in one, smooth motion. At that point it was clear to me that Carl Sullivan had already thought

13

about the possibility that he might be interrupted by a homeowner during this crime and that he had prepared himself for that occasion.

Not only did Carl Sullivan not run off after being confronted and told me to leave my home, he lunged after me with his weapon. I'm a good-sized guy, but the behavior of Carl Sullivan disturbed me. His demeanor was that of a man who had killed to obtain his goal which, in this case, was to make off with about a hundred thousand dollars worth of valuables from my home.

So many things went through my mind. What if my mother or my [fiancée] walked in on Carl Sullivan instead of me. I have a feeling Carl Sullivan would be facing murder charges, too, if he was ever even caught. So Carl Sullivan didn't succeed in taking my life the first time, so he tried to run me over with the car he just stole. Well, I barely escaped with mine and my dog's lives as he came crashing through the gate that goes across my driveway, sustaining what could be a lifetime disability to my right knee.

Because of the gate hitting me as he was racing towards me in the car, it was obvious to me that Carl Sullivan has very little regard for human life and as he crashed through the gate, sped across a very busy sidewalk and onto a very busy street almost hitting several people. I knew this was a violent man who was prepared and ready to kill whomever was in his way, so that he may commit his crime. Now I have to wonder daily how many unsolved crimes is this man responsible for –

\* \* \*

— how many of these crimes has be not been caught and convicted

\* \* \*

— these thoughts went through my mind as he was racing from my home. By his actions after he was caught, they were clearly the actions of a professional in his field. Receiving the maximum time provided by law for this guy

\* \* \*

— would be doing Carl Sullivan and the rest of society a favor. Please, your Honor, keep this man off the streets and out of peoples' homes as long as you can.

*Id.* at 9-12. Sullivan contends that his constitutional right to a fair sentencing was violated by the following specific comment of the first victim: "To me it's apparent that Mr. Sullivan was willing to kill to commit this crime." *See* Amended Petition, pp. 7-8. And, Sullivan complains of the following specific comments of the second victim: that Sullivan's "demeanor was that of a man who had killed to obtain his goal;" that he had "a feeling Carl Sullivan would be facing murder charges too," if his mother or fiancée had walked in on him during the burglary; that "Carl Sullivan didn't succeed in taking

[his] life the first time, so he tried to run [him] over with the car he just stole;" that he "knew this was a violent man who was prepared and ready to kill whomever was in his way, so that he may commit his crime;" and that he had "to wonder how many unsolved crimes is this man responsible for." *See id.*

Respondents argue, in their answer, that this claim was not exhausted in state court.  Answer (dkt. no. 85), pp. 25-26.  Respondents contend, in this regard, that, while Sullivan raised a similar claim in the Nevada Supreme Court, he did not there challenge all the specific comments of the victims that he complains of in federal court. *Id.*

A federal court may not grant habeas corpus relief on a claim not exhausted in state court. 28 U.S.C. § 2254(b). The exhaustion doctrine is based on the policy of federal-state comity, and is intended to allow state courts the initial opportunity to correct constitutional deprivations. *See Picard v. Conner*, 404 U.S. 270, 275 (1971). To exhaust a claim, a petitioner must fairly present the claim to the highest state court, and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

The court finds that this claim is exhausted. Sullivan's argument to the state supreme court reasonably encompassed the claim made here in federal court. *See* Fast Track Statement, Exhibit 10, pp. 6-8. Also, in the state supreme court, Sullivan cited *Buschauer v. State*, 106 Nev. 890, 804 P.2d 1046 (1990), in which the Nevada Supreme Court relied in part on Supreme Court precedent – albeit Supreme Court precedent that had been overruled some seven years earlier. *See* Fast Track Statement, Exhibit 10, pp. 6-8, citing *Booth v. Maryland*, 482 U.S. 496 (1987), overruled in *Payne v. Tennessee*, 501 U.S. 808 (1991).

The Court, however, finds the claim to be meritless. The only Supreme Court precedent cited by Sullivan in support of the claim is *Payne v. Tennessee*, 501 U.S. 808 (1991). In *Payne*, the Court overruled *Booth*, and retreated from a per se rule barring, in a capital sentencing, admissibility of victim impact evidence regarding a victim's

personal characteristics and the victim's family's emotional trauma. In support of his claim here in Ground 2, Sullivan appears to rely on dicta in *Payne*, wherein the Court noted in passing that "[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Payne*, 501 U.S. at 825. Following that sentence in *Payne*, the Court cited to *Darden v. Wainwright*, 477 U.S. 168, 179-183 (1986), which concerned juror bias and voir dire. While this Court generally agrees with the proposition that the Due Process Clause provides a mechanism for relief where evidence introduced at a sentencing is so unduly prejudicial that it renders the trial fundamentally unfair, the Court finds that the dicta in *Payne* is not the kind of "clearly established Federal law, as determined by the Supreme Court of the United States" that 28 U.S.C. § 2254(d)(1) contemplates as a basis for federal habeas corpus relief.

Furthermore, the Court finds that the victims' statements in this case certainly did not render Sullivan's sentencing fundamentally unfair. Those statements reflected the victims' quite understandable emotional reaction to Sullivan's crimes. The statements did not refer to any particular prior criminal acts by Sullivan, but only expressed that Sullivan's crimes led the victims to wonder what other crimes Sullivan had committed. As far as the victims' statements regarding the danger that Sullivan posed, the statements were the victims' legitimate impressions of the perpetrator of serious, violent crimes against them.[2]

Moreover, this Court assumes that the trial judge applied the law, and considered only admissible evidence in sentencing Sullivan. *See Landrigan v. Stewart*, 272 F.3d

---

[2]At the evidentiary hearing in his state habeas action, when asked on cross-examination if he would have used the knife if the victim of the robbery had not left the garage, Sullivan certainly did not rule out the possibility. He answered: "I doubt it. I can't say for sure. Who knows? … I mean, I'm not going to lie, I could you know. Who knows what can happen to a person that's backed up against the wall. But I think my prior 27 years speak volumes that I probably wouldn't have." Transcript of Proceedings of August 6, 2003, Exhibit 30, p. 70.

1   1221, 1230 (9th Cir.2001); *Smith v. Stewart*, 140 F.3d 1263, 1272 (9th Cir.1998) (a
2   judge can "separate the wheat from the chaff").

3          The Nevada Supreme Court's denial of relief on this claim was not contrary to, or
4   an unreasonable application of, United States Supreme Court precedent, and was not
5   based on an unreasonable determination of the facts in light of the evidence.

6          **C.      Ground 3**

7          In Ground 3, Sullivan claims that his "due process rights guaranteed by the Fifth
8   and Fourteenth Amendments to the United States Constitution were violated as the
9   result of duplicative charges which resulted from one transaction." Amended Petition, p.
10  9.

11         The respondents contend that this claim is unexhausted in state court. Answer,
12  pp. 26-27. The Court finds, however, that Sullivan sufficiently presented the claim in
13  state court, such that it is exhausted. *See* Fast Track Statement, Exhibit 36, p. 6; *see*
14  *also* Memorandum in Opposition to, and Motion for Partial Dismissal of, Supplemental
15  Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 27, pp. 3-4 (State
16  responded to claim as a double jeopardy claim).

17         The respondents also contend that this claim is barred by the procedural default
18  doctrine. Answer, pp. 30-31. However, the Court has previously ruled that the
19  procedural default doctrine does not bar any of Sullivan's claims. *See* Order entered
20  August 21, 2006, dkt. no. 43, pp. 15-17. The court of appeals did not disturb that ruling
21  on either of Sullivan's appeals. *See* Memorandum Order of Court of Appeals, dkt. no.
22  53; Memorandum Order of Court of Appeals, dkt. no. 76. This Court's ruling regarding
23  respondents' procedural default defense remains in force pursuant to the law of the
24  case doctrine. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir.1997) ("[A]
25  court is generally precluded from reconsidering an issue that has already been decided
26  by the same court, or a higher court in the identical case." (*quoting Thomas v. Bible*,
27  983 F.2d 152, 154 (9th Cir.), *cert. denied* 508 U.S. 951 (1993))). The respondents have
28  not demonstrated any circumstance warranting re-examination of this court's ruling

1  regarding their procedural default defense. *See id.* (identifying circumstances in which a

2  court has discretion to depart from the law of the case doctrine).

3        Regarding its merits, however, Sullivan's claim in Ground 3 is meritless.

4        The state district court ruled as follows:

5             …[T]he charges were not multiplicitous. The burglary was complete
      when Sullivan entered the home with larcenous intent. The robbery
6      occurred later when Sullivan used the threat of force to be able to flee with
      the stolen property. The possession of stolen property was a continuing
7      offense. The charges are distinct in law and in fact and this court would
      find that the prosecutor was not required to elect and the court was not
8      required to merge the offenses.

9  Findings of Fact, Conclusions of Law and Judgment, Exhibit 32, p. 4. The Nevada

10  Supreme Court affirmed this ruling on its merits (in the alternative to its ruling that

11  Sullivan's petition was untimely), without discussion. *See Sullivan*, 120 Nev. at 542, 96

12  P.3d at 765.

13        The Supreme Court rulings Sullivan cites in support of this claim are *Benton v.*

14  *Maryland*, 395 U.S. 784 (1969), and *Brown v. Ohio*, 432 U.S. 161 (1977). *See* Amended

15  Petition, p. 9; Reply, pp. 17-18. Neither of those Supreme Court precedents remotely

16  supports an argument that the state courts' ruling on this claim was objectively

17  unreasonable. Notably, in *Brown*, the Supreme Court instructed:

18       The established test for determining whether two offenses are sufficiently
      distinguishable to permit the imposition of cumulative punishment was
19      stated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180,
      182, 76 L.Ed. 306 (1932):
20
              "The applicable rule is that where the same act or
21           transaction constitutes a violation of two distinct statutory
              provisions, the test to be applied to determine whether there
22           are two offenses or only one, is whether each provision
              requires proof of an additional fact which the other does not
23           .…"

24       This test emphasizes the elements of the two crimes. "If each requires
      proof of a fact that the other does not, the *Blockburger* test is satisfied,
25      notwithstanding a substantial overlap in the proof offered to establish the
      crimes.… " *Iannelli v. United States*, 420 U.S. 770, 785 n.17, 95 S.Ct.
26      1284, 1294 n.17, 43 L.Ed.2d 616 (1975).

27  ///

28  ///

1   *Brown*, 432 U.S. at 166.  For good reason, Sullivan does not make any argument in this

2   Court, and he did not argue in state court, that conviction of the crimes of robbery,

3   burglary and possession of stolen property require proof of the same elements.

4       Moreover, in this case, not only would those three charged crimes have required

5   proof of different elements, they were based on distinctly different facts: the robbery

6   charge was based on Sullivan's theft of the automobile; the burglary charge was based

7   on Sullivan's entry of the residence to commit the thefts; and the possession of stolen

8   property charge was based on Sullivan's possession of mink coats, a camera, a

9   compact disc player, a video cassette recorder and miscellaneous jewelry stolen from

10  the residence.  *See* Information, Exhibit 3, pp. 1-3.

11      There was no double jeopardy violation.  The Nevada Supreme Court's denial of

12  relief on this claim was not contrary to, or an unreasonable application of *Benton* or

13  *Brown*, or any other United States Supreme Court precedent, and was not based on an

14  unreasonable determination of the facts in light of the evidence.

15      **D.    Ground 4**

16      In Ground 4, Sullivan claims that he "was deprived of his right to due process

17  guaranteed by the Eighth and Fourteenth Amendment of the United States Constitution

18  due to the trial court's erroneous imposition of restitution in the amount of $12,000 when

19  not a scintilla of evidence was provided to support such an exorbitant amount."

20  Amended Petition, p. 10.

21      Respondents argue that Ground 4 is unexhausted. Answer, p. 27. However,

22  Sullivan did, in his state habeas petition, raise a due process claim with respect to the

23  restitution award, and, while he made no real argument regarding that claim in the

24  Nevada Supreme Court, he alerted the court that the claim was raised. *See* Petition for

25  Writ of Habeas Corpus, Exhibit 16, p. 6; Fast Track Statement, Exhibit 36, pp. 5, 9-10.

26  The Nevada Supreme Court affirmed the denial of the claim without any discussion.

27  Ground 4 is exhausted.

28  ///

The respondents also contend that this claim is barred by the procedural default doctrine. Answer, pp. 30-31. However, as is discussed above, this Court has already ruled that the procedural default doctrine does not bar any of Sullivan's claims, and that ruling is the law of the case. *See* Order entered August 21, 2006, dkt. no. 43, pp. 15-17.

Ground 4 is, however, without merit. Sullivan does not cite to any United States Supreme Court precedent in support of this claim. *See* Amended Petition, p. 10; Reply, pp. 18-19. Therefore, he makes no showing that the state courts' ruling on the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," under 28 U.S.C. § 2254(d).

Moreover, with respect to Sullivan's factual argument in support of the claim, there was in fact evidence presented in state court regarding the amount of damages that the victims suffered. The presentence investigation report stated:

> During investigation, the single victim in this case was contacted by the Division. The victim informed that while he did refuse medical attention on the day of the instant offense after the portion of the fence struck him in the back of both knees, he went to his doctor the next day. The victim stated that he is still in pain at present, has not returned to work, and had to walk for two weeks on a crutch.
>
> The victim informed that he plans on being at sentencing to make a statement to the Court. The victim informed that he is still struggling personally and feels invaded and his dog is still spooked by the entire incident.
>
> *   *   *
>
> Monetarily, the victim estimates that he sustained a monetary loss between $10,000 to $12,000, as a result of medical bills, the $300 leather jacket that was damaged and damage to the car and home.
>
> Based upon the above, restitution in the amount of $12,000 is deemed appropriate and will be made part of the recommendation.

Presentence Investigation Report, Exhibit 44, p. 8.  And, at the sentencing hearing, the first of the victims stated the following:

> This home has been in my family since 1922, and it's always been a secure place, but at this time, I'm unable to sleep. I'm being treated for stress headaches. There's over a thousand dollars of my own money

that's not even covered by insurance to repair the damages that Mr. Sullivan did to my home.  The total damages are over $12,000.  The car that he drove through my front gate is still in the shop.  I'm unable to drive it.

My [fiance'], who was there at the time, is the one that's really suffered most of the damage.  He was about to start a new job at the time of this crime and his company had gone out of business, and when Mr. Sullivan drove my car right through the front gate, he damaged the cartilage in [his] knees and he can't work at a full time basis right now.

Transcript of Proceedings of February 13, 1998, Exhibit 7, p. 8.  The other victim stated that the physical injury that he suffered during the robbery could be a lifetime disability:

So Carl Sullivan didn't succeed in taking my life the first time, so he tried to run me over with the car he just stole.  Well, I barely escaped with mine and my dog's lives as he came crashing through the gate that goes across my driveway, sustaining what could be a lifetime disability to my right knee.

*Id.* at 10. There was, therefore, evidence supporting the sentencing court's imposition of $12,000 in restitution.

In this federal habeas action, apparently in an effort to show that there was evidence available that might have shown the victims' damages to be less than $12,000, Sullivan proffers as an exhibit what is purported to be a letter from an insurer. *See* Amended Petition, p. 10; Reply, p. 19; *see also* Letter, Exhibit 43. It appears from the record, however, that the letter was never presented in state court. *See* Findings of Fact, Conclusions of Law and Judgment, Exhibit 32, p. 8 (State district court stated, about the letter: "The Court notes that no such letter was introduced in evidence at the habeas corpus hearing and thus this court cannot find that the letter exists, or that it was admissible or that it was of such a nature as to have had any impact on the sentencing.") A state court's decision may be assessed, under 28 U.S.C. § 2254(d), only in light of the record before that court.  *See  Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011) ("It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court."). In analyzing Ground 4 under section 2254(d), the Court does not take into consideration the letter submitted by Sullivan as Exhibit 43.

The Court finds that the Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of any United States Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence.

**E.    Ground 5**

In Ground 5, Sullivan claims violations of his constitutional right to effective assistance of counsel.  Amended Petition, p. 10.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for analysis of claims of ineffective assistance of counsel: a petitioner claiming ineffective assistance of counsel must demonstrate (1) that his attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688; *see also id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of the 28 U.S.C. § 2254(d) analysis. *See Pinholster*, 131 S.Ct. at 1403. Courts have recognized that a "doubly" deferential judicial review is called for in analyzing ineffective assistance of counsel claims in federal habeas actions. *See id.* at 1410-11. The general rule of *Strickland*, that defense counsel's effectiveness is to be reviewed with great deference, gives the state courts greater leeway in reasonably applying *Strickland*, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney*, 614 F.3d at 995 (*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The ultimate question, then, is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 131 S.Ct. at 788.

Ground 5 includes three subclaims, Grounds 5A, 5B and 5C.

### 1.      Ground 5A

In Ground 5A, Sullivan claims that his right to effective assistance of counsel was violated on account of his trial counsel's "[f]ailure to investigate the case and present mitigating evidence at sentencing." Amended Petition, p. 11. There are three aspects of Sullivan's claim in this regard:  first, he claims that his trial counsel "failed to interview the state's witnesses" and discover "that Sullivan was under the influence at the time of the offense," and he claims that his "mental state could have been a defense at trial or a mitigating factor at sentencing;" second, he claims that his trial counsel "failed to conduct investigation regarding the amount of damages to which Sullivan would be responsible in the form of restitution;" and third, he claims that his trial counsel "failed to present any mitigating evidence at Sullivan's sentencing hearing," and did not advise Sullivan of the importance or the opportunity to present such evidence." *Id.*

Respondents argue that Ground 5A is unexhausted. Answer, pp. 27-28. This Court, however, finds that Sullivan raised the claim before the Nevada Supreme Court on the appeal in his state habeas action. *See* Fast Track Statement, Exhibit 36, pp. 6-9. Ground 5A is exhausted.

The respondents also contend that this claim is barred by the procedural default doctrine. Answer, pp. 30-31. However, as is discussed above, this Court has already ruled that the procedural default doctrine does not bar any of Sullivan's claims, and that ruling is the law of the case. *See* Order entered August 21, 2006, dkt. no. 43, pp. 15-17.

The state district court ruled as follows:

> The second claim has multiple sub-parts. Sullivan claims in part 2A of the petition that counsel rendered ineffective assistance in failing to investigate and learn that Sullivan was so intoxicated that he was unable to form the mental state required for some of the crimes. The court first finds that from their very first meeting Sullivan was adamant that he would not be going to trial. The defendant has the right to choose how to plead in a criminal case and a lawyer who does not undercut that authority is not ineffective. Furthermore, the reasonableness of an investigation will often turn, as it did in this case, on the information received from the client. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Here, the testimony at the habeas corpus hearing revealed that

Sullivan was not so intoxicated as to have any legal significance. The court finds that if counsel had inquired of Sullivan, he would not have learned that Sullivan had any potential defense to the charges. The court also notes that Sullivan was fully informed of the elements fo the offense and voluntarily determined to plead guilty, knowing of the *mens rea* of the various offenses.

There is also the question of prejudice from counsel's alleged failure to investigate. When a conviction stems from a guilty plea, and the claim is ineffective assistance of counsel in failing to investigate, the petitioner bears the burden of proving that but for the failings of counsel he would have insisted on a trial on all available charges and enhancements. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The court is not persuaded that if counsel had inquired further, the results of the investigation would have altered counsel's advice. More importantly, the court is convinced that no investigation would have altered Sullivan's decision to plead guilty. The court is not persuaded that there was anything counsel could have done to sway Sullivan from his decision to plead guilty.

*     *     *

Ground 2E also included the claim that counsel was ineffective in failing to present the live testimony of Dr. Hiller at sentencing. The court finds no evidence that Dr. Hiller would have testified in some manner different from his written report. The court further finds no evidence supporting the proposition that reasonable lawyers would prefer to subject a favorable witness to cross-examination when they are able to present the court with a written report without the risks of cross-examination. Finally, the court sees no reason to believe that the sentence would have been different if only Dr. Hiller had presented live testimony at the sentencing hearing.

Ground 2E also includes claims that counsel was ineffective in failing to present additional mitigating testimony from various witnesses. No such witnesses testified in the habeas corpus hearing and so the court must find that Sullivan has failed to identify a single person who was willing to say a kind word about him.

Ground 2F is a claim that counsel rendered ineffective assistance in failing to present in evidence a letter in which an insurance company assessed the compensable loss to the victims. Sullivan asserted that the letter would have contradicted the testimony of the victims regarding restitution. The court notes that no such letter was introduced in evidence at the habeas corpus hearing and thus this court cannot find that the letter exists, or that it was admissible or that it was of such a nature as to have had any impact on the sentencing. Thus, the court finds that Sullivan has failed to show that counsel was unreasonable or that he was prejudiced by the performance of counsel. The court also notes that if the letter existed and it was as described in the petition, the letter would be a hearsay statement of an insurer's estimate of losses covered by the relevant policy. The court finds that the amount and type of insurance available to the victims would have had no bearing on the amount of restitution ordered by the court. An assessment shaped by such factors as the terms

of an insurance policy would have no effect on a criminal court's assessment of restitution.

\*   \*   \*

One who would assert a claim of ineffective assistance must bear the burden of showing that the performance of counsel fell below an objective standard of reasonableness and that but for the failings of counsel a different result was likely. *Strickland*, *supra*. Sullivan has failed to meet that burden. His own testimony was incredible and failed to persuade the court that counsel acted unreasonably in any way, or that Sullivan would have pleaded not guilty, or that the sentence might have been different or that the outcome of the appeal might have been different.

Findings of Fact, Conclusions of Law and Judgment, Exhibit 32, pp. 4-10. The Nevada Supreme Court affirmed this ruling on its merits (in the alternative to its ruling that Sullivan's petition was untimely), without discussion. *See Sullivan*, 120 Nev. at 542, 96 P.3d at 765.

Sullivan has made no showing that the state courts' ruling was objectively unreasonable.

Regarding the claim that Sullivan's trial counsel was ineffective for failing to interview the state's witnesses and discover that Sullivan was under the influence at the time of the offense, in state court Sullivan made no showing what witnesses should have been interviewed, and he made no showing what any witness would have said. Furthermore, Sullivan, himself, obviously knew that he was under the influence of alcohol and heroin when he committed the crimes, and he testified about that at the evidentiary hearing, but the state district court reasonably found as follows:

Here, the testimony at the habeas corpus hearing revealed that Sullivan was not so intoxicated as to have any legal significance. The court finds that if counsel had inquired of Sullivan, he would not have learned that Sullivan had any potential defense to the charges.

Findings of Fact, Conclusions of Law and Judgment, Exhibit 32, p. 5; *see also* Transcript of Proceedings of August 6, 2003, Exhibit 30, pp. 31-36, 49-54.

Moreover, with respect to Sullivan's heroin use, his trial counsel did submit to the sentencing court the report of a doctor who examined Sullivan; the report concerned Sullivan's substance abuse, its effect on his commission of the crimes, and his

1   willingness to seek treatment. Sullivan complains that his counsel did not actually call

2   that doctor to testify at the sentencing, but the state courts reasonably ruled that there

3   was no showing that counsel's strategic decision in that regard was unreasonable, or

4   that there was any reasonable probability that it had any effect on the outcome of the

5   sentencing. Findings of Fact, Conclusions of Law and Judgment, Exhibit 32, pp. 7-8;

6   *see also* Transcript of Proceedings of August 6, 2003, Exhibit 30, pp. 39-40, 44.

7          Regarding Sullivan's claim that his counsel failed to adequately investigate the

8   restitution amount, in state court this argument focused on trial counsel's alleged failure

9   to investigate and make use of the insurance company's letter. The state district court,

10  though, reasonably ruled against Sullivan on that claim, pointing out that the letter was

11  not offered as evidence. *See* Findings of Fact, Conclusions of Law and Judgment,

12  Exhibit 32, pp. 8-9. Furthermore, Sullivan's trial counsel testified at the evidentiary

13  hearing that he made a strategic decision not to make an issue of the restitution

14  amount. *See* Transcript of Proceedings of August 6, 2003, Exhibit 30, pp.27-28 ("[I]t's

15  been a longstanding policy of mine, which is shared by many of my colleagues in my

16  office, to not argue restitution in a difficult sentencing such as this case, where I felt it

17  would be — it was going to be difficult to persuade Judge Adams to run any of these

18  terms concurrent.").

19         As for Sullivan's claim that his trial counsel failed to present mitigating evidence

20  at the sentencing hearing, and did not advise Sullivan of the opportunity to do so, the

21  record of the evidentiary hearing reflects that the state courts reasonably concluded that

22  "[n]o such witnesses testified in the habeas corpus hearing and so the court must find

23  that Sullivan has failed to identity a single person who was willing to say a kind word

24  about him." Findings of Fact, Conclusions of Law and Judgment, Exhibit 32, p. 8; *see*

25  *also* Transcript of Proceedings of August 6, 2003, Exhibit 30, pp. 13, 28-29 (trial counsel

26  testified that it was his practice to inform clients about what sort of evidence could be

27  offered at sentencing hearing), and pp. 58, 81-82 (Sullivan testified: "I was so ashamed

28  that I had committed a crime that I didn't want to present any witnesses.").

The state courts' denial of the claims in Ground 5A was not contrary to, or an unreasonable application of United States Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence.

### 2.      Ground 5B

In Ground 5B, Sullivan claims that his right to effective assistance of counsel was violated because of his trial counsel's "[f]ailure to object to testimony of alleged dangerousness at sentencing." Amended Petition, p. 12.

Respondents argue that Ground 5B is unexhausted. Answer, pp. 28-29. The Court, however, finds that Sullivan raised this claim before the Nevada Supreme Court on the appeal in his state habeas action. *See* Fast Track Statement, Exhibit 36, p. 8. Ground 5B is exhausted.

The respondents also contend that this claim is barred by the procedural default doctrine. Answer, pp. 30-31. However, as is discussed above, this Court has already ruled that the procedural default doctrine does not bar any of Sullivan's claims, and that ruling is the law of the case. *See* Order entered August 21, 2006, dkt. no. 43, pp. 15-17.

The state district court ruled as follows on this claim:

> Grounds 2B and 2C consist of claims that counsel was ineffective in failing to object to certain portions of testimony from the victims during the sentencing hearing. The court first finds that the disputed testimony was properly admitted and any objection would have been overruled. The victims were properly allowed to voice opinions and conclusions based on their observations. The court further finds that Sullivan has not adduced any evidence of such persuasive force as to convince the court that counsel's failure to object fell below an objective standard of reasonableness. The mere fact [that] an objection might be available does not mean that lawyers must voice the objection. The petitioner bears the burden of showing by strong and convincing evidence that the specific decisions of counsel fell below an objective standard of reasonableness. Because no objective standard requires counsel to notice and to voice all possible objections, it appears that Sullivan is advancing the proposition that counsel's performance fell below a subjective standard of reasonableness. This would not be grounds for relief even if proven. Nevertheless, the court notes that it is not persuaded that counsel's failure to object was unreasonable by any standard.
>
> The court also finds that the lack of an objection gave rise to no prejudice. It is apparent that Judge Adams decided the appropriate sentence based on the nature of the crime and the character of the defendant. Reasonable jurists routinely separate the wheat from the chaff

1
2

in sentencing hearings. *Randell v. State*, 109 Nev. 5, 7-8, 846 P.2d 278, 280 (1993). The court finds that the sentence would have been the same with or without the disputed comments from the victims.

3  Findings of Fact, Conclusions of Law and Judgment, Exhibit 32, pp. 6-7. The Nevada

4  Supreme Court affirmed this ruling on its merits (in the alternative to its ruling that

5  Sullivan's petition was untimely), without discussion. *See Sullivan*, 120 Nev. at 542, 96

6  P.3d at 765.

7      To the extent that an objection by trial counsel might have been made on state

8  law grounds, the ruling of the Nevada Supreme Court that the victims' testimony

9  "was properly admitted and any objection would have been overruled," is binding.

10  Findings of Fact, Conclusions of Law and Judgment, Exhibit 32, p. 6. And, as for any

11  possible objection on federal constitutional grounds, this Court has determined that the

12  testimony of the victims did not render Sullivan's trial fundamentally unfair, and that it

13  did not violate Sullivan's federal constitutional right to due process of law. *See*

14  Discussion, *supra*, Section IV.B.

15      The Court, therefore, finds objectively reasonable the conclusions of the state

16  courts, that Sullivan's trial counsel did not perform unreasonably in not objecting to the

17  challenged comments of the victims, and that even if counsel had objected to the

18  challenged comments, there is no reasonable probability that the outcome of the

19  sentencing would have been different.

20          **3.     Ground 5C**

21      In Ground 5C, Sullivan claims that his right to effective assistance of counsel was

22  violated because of his trial counsel's "[m]isrepresentation as to the potential sentence."

23  Amended Petition, p. 12. Sullivan claims that his trial counsel "assured him that the

24  court would impose concurrent sentences," and he claims that assurance induced him

25  to plead guilty. *Id.*

26      The respondents contend that this claim is barred by the procedural default

27  doctrine. Answer, pp. 30-31. However, as is discussed above, this Court has already

28  ///

ruled that the procedural default doctrine does not bar any of Sullivan's claims, and that

ruling is the law of the case. *See* Order entered August 21, 2006, dkt. no. 43, pp. 15-17.

The state district court ruled as follows on this claim:

> Ground 2D was a claim that the plea was based on a guarantee of concurrent sentences. Sullivan's testimony on this point was false. The court finds that no promises were made by defense counsel. The court further finds that even if Sullivan had some belief that concurrent sentences were assured when he entered the courtroom to enter his plea, the court disabused him of any notion that he could be assured of any specific sentence. Thus, the court finds that the plea was voluntary and knowing. The court also notes that a subjective expectation of leniency, not caused by the prosecutor or the court, is not grounds to invalidate a guilty plea. *Rouse v. State*, 91 Nev. 677, 541 P.2d 643 (1975). Thus, even if Sullivan's testimony were true, the court would not set aside the judgment of conviction.

Findings of Fact, Conclusions of Law and Judgment, Exhibit 32, p. 7. As with Sullivan's

other claims of ineffective assistance of counsel, the Nevada Supreme Court affirmed

this ruling on its merits (in the alternative to its ruling that Sullivan's petition was

untimely), without discussion. *See Sullivan*, 120 Nev. at 542, 96 P.3d at 765.

Central to the state courts' ruling is the state district court's finding that Sullivan's

testimony at the evidentiary hearing was not believable, but his trial counsel's was.

That court stated in this regard:

> The court initially notes that [trial counsel] was credible and Sullivan was not. In particular, the court notes that at least part of Sullivan's testimony was blatantly false, thus calling the balance of his testimony into question. Because of that, and other factors, the court resolved evidentiary conflicts by believing [trial counsel] and not believing Sullivan.

Findings of Fact, Conclusions of Law and Judgment, Exhibit 32, p. 3. And, again, with

regard to the particular claim that Sullivan relied upon assurances by his counsel that he

would receive concurrent sentences, the state district court stated:

> Sullivan's testimony on this point was false. The court finds that no promises were made by defense counsel.

*Id.* at 7.  The state district court's finding regarding the relative credibility of Sullivan and

his trial counsel is not unreasonable in light of the evidence. *See, e.g.*, Transcript of

///

1   Proceedings of August 6, 2003, Exhibit 30, pp. 10-11 (testimony of trial counsel), and

2   pp. 53-56, 58-59 (testimony of Sullivan).

3        The Court finds objectively reasonable the conclusions of the state courts, that

4   Sullivan's trial counsel did not assure him that he would receive concurrent sentences,

5   and that, therefore, Sullivan has not shown any ineffective assistance of his counsel as

6   alleged in Ground 5C.

7   **V.     CERTIFICATE OF APPEALABILITY**

8        The standard for issuance of a certificate of appealability calls for a "substantial

9   showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court

10  interpreted 28 U.S.C. §2253(c) as follows:

11         Where a district court has rejected the constitutional claims on the merits,
           the showing required to satisfy §2253(c) is straightforward: The petitioner
12         must demonstrate that reasonable jurists would find the district court's
           assessment of the constitutional claims debatable or wrong.
13

14  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074,

15  1077-79 (9th Cir.2000). The Supreme Court further illuminated the standard in *Miller-El*

16  *v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

17         We do not require petitioner to prove, before the issuance of a COA, that
           some jurists would grant the petition for habeas corpus. Indeed, a claim
18         can be debatable even though every jurist of reason might agree, after the
           COA has been granted and the case has received full consideration, that
19         petitioner will not prevail. As we stated in Slack, "[w]here a district court
           has rejected the constitutional claims on the merits, the showing required
20         to satisfy § 2253(c) is straightforward: The petitioner must demonstrate
           that reasonable jurists would find the district court's assessment of the
21         constitutional claims debatable or wrong."

22  *Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

23       The court has considered the issues raised by Sullivan, with respect to whether

24  they satisfy the standard for issuance of a certificate of appeal, and the court

25  determines that none do. The court will deny Sullivan a certificate of appealability in all

26  respects.

27  ///

28  ///

1   **VI.    CONCLUSION**

2          It is therefore ordered that that petitioner's Amended Petition for Writ of Habeas

3   Corpus (dkt. no. 14) is denied.

4          It is further ordered that petitioner is denied a certificate of appealability.

5          It is further ordered that the Clerk shall enter judgment accordingly.

6
          DATED THIS 31st day of July 2014.
7

8
                                    _____
9                                   MIRANDA M. DU
                                    UNITED STATES DISTRICT JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28